UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TODD LYNCH, | : | CIVIL ACTION NO. 303CV0381 (MRK) |
| PLAINTIFF, | : | |
| | : | |
| v. | : | |
| | : | |
| CATHY MCNAMARA, ET AL, | : | |
| DEFENDANTS. | : | APRIL 29, 2004 |

**PLAINTIFF'S OPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**FACTS**

1. Plaintiff Todd Lynch ("Lynch") has been employed by the Connecticut State Police since September 1987. Lynch dep. 39 - 40 (Lynch's dep. may be found at Defendants' Exh. G.).

2. In July 2000, Lynch joined the Statewide Firearms Trafficking Task Force. Lynch dep. 46 - 47.

3. On March 28, 2001, Ruben Rodriguez made a citizen complaint against Lynch. Defendants' Exh. 13.

4. The sole method by which Defendants provided Lynch was notice of the charges Defendants were making against Lynch as a result of Rodriguez' citizen complaint was Defendants' act, on March 29, 2001, of providing Lynch with a copy of the a Complaint dated March 28, 2001 ("Complaint"). Lynch Aff. at 4; Defendants Statement of Material Facts ("SMF") ¶ 50.

5. The Complaint did not provide Lynch with notice that Defendants were charging him with violating Defendants' Release of Prisoners Policy.  See Defendant's Exh. 13.

6. Ultimately, Defendants sustained against Lynch the charge of violating Defendants' Release or Prisoners policy, Defendant's SMF ¶ 79, which policy provides, in essence, that 'a police officer shall not void an arrest without court authorization.'  Defendant's SMF ¶ 48

7. Defendants' "justification" for sustaining the charge of violating Defendants' "Release of Prisoners" policy are found in Defendants' Exh. 23 at 30, which states:

> On November 28, 2000 members of SFTTF went to 23 Lourdes Court in Meriden where Sgt. Lynch placed Ruben Rodriguez under arrest and placed handcuffs on Rodriguez. Det. McWilliams led Rodriguez from the residence in handcuffs and transported to their office. All members of SFTTF believed Rodriguez was under arrest and Sgt. Lynch admitted to placing Rodriguez under arrest. Det. McWililams telephoned Assistant State's Attorney Cathy McWilliams and told her Rodriguez was under arrest and a million dollar bond was placed on him. After Sgt. Lynch spoke to Attorney McNamara, he tells Det. McWilliams to fill out the proper paperwork for Rodriguez to become a confidential informant and release him. Det. McWilliams complied and later drove Rodriguez home. Det. McWilliams and Sgt. Lynch stated Rodriguez was aware that he would be arrested at a later date on a warrant. Det. McWilliams completed his report, T00-001446, which is endorsed by Sgt. Lynch. The report contained no mention of Rodriguez's arrest on November 28, 2000, his detainment, removable from his home in handcuffs to a state police facility or any documentation of the arrest.

8. Defendants' "justification" does not, in any way, shape or form find any facts that support the conclusion that Lynch voided an arrest <u>without court authorization</u>.  <u>Id</u>.

9. Defendants' own policies, which claim to be designed to "ensure that internal investigations are fairly, uniformly and thoroughly conducted",  provide that such

       investigations should be completed in a "timely manner" and, more specifically, that such investigations should be completed "not later than 60 days from assignment ... to an investigator, with some extensions permitted." Defendants's Exh. 1 at 619, 629 and 633.

10. The Lynch investigation, from assignment to an investigator on March 28, 2001, Defendant's SMF ¶ 49, to imposition of discipline on April 30, 2002, Defendant's SMF ¶ 86, took 393 days!

11. In Lynch's nearly 17 years as an employee of the Connecticut State Police, he learned of some internal investigations which took slightly longer than the standard 60 days to complete, but he never heard of an internal investigation which took anywhere near 393 days to complete. Lynch Aff. 5A.

12. Lynch did not consent to the investigation taking longer than 60 days to complete. Lynch Aff. 5B.

13. In fact, Lynch regularly complained that the investigation was taking too long.

14. Lynch settled his grievance in the way that he did because his Labor Agent, Jerry Maguire, specifically told him that the grievance procedure, while empowered to provide an employee with certain remedies, was simply not empowered to provide an employee with the remedies that Lynch sought: (1) reversal of Defendants' decision to sustain the charge of violating Defendants' "Release of Prisoners" policy and (2) compensation for being denied the due process rights of (a) receiving notice, (b) receiving a decision that was actually justified by the facts, (c) receiving a decision within a meaningful time, etc. Lynch Aff. ¶ 6.

15. Maguire told Lynch that the settlement Lynch made was the best that he could do under

the grievance procedures, and that, to obtain the other remedies Lynch sought, Lynch would need to file an action in court.  Lynch Aff. ¶ 7.

**ARGUMENT**

I. **DEFENDANTS DEPRIVED LYNCH OF PROPERTY WITHOUT DUE PROCESS OF LAW.**

To prevail on a due process claim, a plaintiff need only establish that: (1) plaintiff has a constitutionally protected property interest; (2) defendant deprived plaintiff of that property interest; and (3) defendant did so without affording plaintiff due process of law.  Zigmund v. Foster, 106 F.Supp.2d 352 (D. Conn. 2002).

In the instant case, a reasonable jury could easily find that Defendants deprived Lynch of property without due process of law because a reasonable jury could easily find that:

- Lynch had a constitutionally protected property interest in his Statewide Firearms Trafficking Task Force position;

- Defendants deprived Lynch of that property interest; and

- Defendants did so without affording Lynch due process of law.

A. **LYNCH HAD A CONSTITUTIONALLY PROTECTED PROPERTY INTEREST IN HIS STATEWIDE FIREARMS TRAFFICKING TASK FORCE POSITION.**

Under the law, a police officer has a constitutionally protected property interest in his specific position if the collective bargaining agreement between the State and the union to which said officer belongs provides that an officer may not be disciplinarily transferred without just cause.  See Moffitt v. Town of Brookfield, 950. F.2d 880 (2nd Cir. 1991) (just cause provision in collective bargaining agreement creates constitutionally protected property interest); Russo v. City of Hartford, 136 F.Supp.3d _ (D. Conn. 2001) (notwithstanding the instant Defendants'

claim to the contrary: police officer can in fact have a constitutionally protected property interest in the specific "type of work he did prior" to the imposition of discipline).

Applying the law to the instant case: Lynch had a constitutionally protected property interest in his Statewide Firearms Trafficking Task Force position because:

- The collective bargaining agreement between the State and the union to which Lynch belongs specifically provides that "[t]ransfers which have been designated as disciplinary shall be subject to the "just cause" standard";[1] and

- At the time of its imposition, Defendants' transfer of Lynch from his Statewide Firearms Trafficking Task Force position was in fact designated as disciplinary.[2]

Accordingly, a reasonable jury could easily find that Lynch had a constitutionally protected property interest in his Statewide Firearms Trafficking Task Force position.

### B. DEFENDANTS DEPRIVED LYNCH OF HIS STATEWIDE FIREARMS TRAFFICKING TASK FORCE POSITION.

It is an undisputed fact that, on or about April 30, 2003, Defendants imposed upon Lynch "a disciplinary transfer" from his Statewide Firearms Trafficking Task Force position. Defendants' Memorandum at 12; Defendants' SMF ¶ 85.

Based on this undisputed fact, a reasonable jury could easily find (indeed, would be required to find) that Defendants deprived Lynch of his Statewide Firearms Trafficking Task Force position.

---

[1] Defendants' Exhibit 2 at 26.

[2] Defendants' Memorandum at 12; Defendants' Statement of Material Facts ("SMF") ¶ 85.

C. **DEFENDANTS SO DEPRIVED LYNCH WITHOUT AFFORDING HIM DUE PROCESS OF LAW.**

1. **Defendants failed to afford Lynch due process of law when Defendants failed to provide Lynch "notice of the charges against him."**

An essential principal of due process is that the "public employee is entitled to ... notice of the charges against him." Cleveland Bd. Of Educ. v. Loudermill, 470 U.S. 532 (1985).

In the instant case:

1. The charge Defendants sustained against Lynch was the charge of violating Defendants "Release of Prisoners" policy. Defendant's SMF ¶ 79.

2. The problem, however, is that Defendants did <u>not</u> provide Lynch with notice of that charge. More specifically:

    A. It is undisputed that the sole method by which Defendants provided Lynch with notice of the charges against him was by providing Lynch with a copy of Defendant's Exh. 13, which is a Complaint dated March 29, 2001 (the "Complaint");[3] and

    B. It is undisputable that that Complaint did <u>not</u> provide Lynch with notice that he was being charged with violating Defendants' "Release of Prisoners" policy, which policy provides, in essence, that "a police officer shall not void an arrest without court authorization." Defendant's SMF ¶ 48. For:

---

[3]   Defendants SMF ¶ 50; Lynch Affidavit ¶ 4.

1.  The "first charge" in the Complaint alleges: "<u>improper arrest/detention of subject</u>."  Clearly, there is nothing in the language of this first charge that could even arguably be construed as giving Lynch notice that he was being charged with "<u>voiding an arrest without court authorization</u>"; and

2.  The "second charge" in the Complaint alleges: "<u>threats toward subject in order to obtain a written statement</u>."  Like the first charge, there is nothing in the language of this second charge that could even arguably be construed as giving Lynch notice that he was being charged with "<u>voiding an arrest without court authorization</u>"; and

3.  The "third charge" in the Complaint alleges: "<u>conducting search of a residence without proper consent</u>."  Like the first and second charges, there is nothing in the language of this third charge that could even arguably be construed as giving Lynch notice that he was being charged with "<u>voiding an arrest without court authorization</u>"; and

4.  The "fourth charge" in the Complaint alleges: "<u>failure to maintain the privacy of a registered 'confidential informant</u>.'"  Like the first, second and third charges, there is nothing in the language of this fourth charge that could even arguably be construed as giving Lynch notice that he was being charged with <u>voiding an arrest</u>

without court authorization; and

5. The "fifth charge" in the Complaint alleges that suspect "<u>was handcuffed and detained for an extended period of time and later released without being arrested</u>." Because this fifth charge contains the specific allegation that the suspect was <u>not</u> arrested, logic dictates that this charge simply could not have given Lynch notice that he was being charged with a violation the very definition of which <u>requires</u> the existence of an arrest:   **<u>voiding an arrest</u> with court authorization**.

Based on the above, a reasonable jury could easily find that Defendants failed to afford Lynch due process of law by failing to provide Lynch notice that he was being charged with violating Defendants' "Release of Prisoners" policy.

> 2. **Defendants failed to afford Lynch due process of law when Defendants sustained the charge of violating Defendants' "Release of Prisoners" policy <u>even though</u> the facts, as found by <u>Defendants</u>, did not support sustaining that charge.**

As noted, Defendants' "Release of Prisoners" policy provides, in essence, that "a police officer shall not void an arrest without court authorization." Thus, to sustain a charge that Lynch violated that policy, Defendants would have needed to find the following facts: (1) Lynch voided an arrest and (2) Lynch did so without court authorization.

Now, the facts relied upon by Defendants as "justification" for sustaining the charge of violating Defendants' "Release of Prisoners" policy are found in the Investigative Report at 30, which states:

> On November 28, 2000 members of SFTTF went to 23 Lourdes

> Court in Meriden where Sgt. Lynch placed Ruben Rodriguez under arrest and placed handcuffs on Rodriguez. Det. McWilliams led Rodriguez from the residence in handcuffs and transported to their office. All members of SFTTF believed Rodriguez was under arrest and Sgt. Lynch admitted to placing Rodriguez under arrest. Det. McWililams telephoned Assistant State's Attorney Cathy McWilliams and told her Rodriguez was under arrest and a million dollar bond was placed on him. After Sgt. Lynch spoke to Attorney McNamara, he tells Det. McWilliams to fill out the proper paperwork for Rodriguez to become a confidential informant and release him. Det. McWilliams complied and later drove Rodriguez home. Det. McWilliams and Sgt. Lynch stated Rodriguez was aware that he would be arrested at a later date on a warrant. Det. McWilliams completed his report, T00-001446, which is endorsed by Sgt. Lynch. The report contained no mention of Rodriguez's arrest on November 28, 2000, his detainment, removable from his home in handcuffs to a state police facility or any documentation of the arrest.

Even a cursory review of this "justification" reveals that, while said "justification" finds that Lynch voided an arrest, said "justification" does not, in any way, shape or form, find that Lynch did so without court authorization. Indeed, the closest said "justification" comes to even addressing the critical issue of whether Lynch acted without court authorization is its provision that finds: "After Sgt. Lynch spoke to Attorney McNamara, he tells Det. McWilliams to fill out the proper paperwork for Rodriguez to become a confidential informant and release him."

Now, while this provision certainly finds that certain events occurred in a certain order, there is <u>nothing</u> in this sentence which even arguably constitutes a finding that Lynch acted without court authorization. Simply put: it does reject - or even address! - Lynch's claim that he acted with court authorization; it does not reject - or even address - "Lynch's view (which was shared by at least one of his colleagues) that, for purposes of the 'Release of Prisoners' policy, receiving "court authorization" means receiving authorization from Attorney McNamara; and it did not reject - or even address! - Lynch's claim that Attorney McNamara in fact authorized

Lynch to release Rodriguez.[4]

Based on the above, a reasonable jury could easily find that Defendants failed to afford Lynch due process of law when Defendants sustained the charge of violating Defendants' "Release of Prisoners" policy <u>even though</u> the facts, as found by <u>Defendants</u>, did not support sustaining that charge.

> 3. **Defendants failed to afford Lynch due process when they unjustifiably prolonged what was supposed to have been a 60 day investigation of the charges against Lynch for an incredible <u>393</u> days.**

A fundamental tenet of due process is the right to be heard "at a meaningful time." <u>Armstrong v. Manzo</u>, 380 US 545, 552 (1965); <u>Cleveland Bd. of Educ. v. Loudermill,</u> 470 US 532 (1985). (recognizing that, at some point, a delay becomes a constitutional deprivation).

In fact, this tenet is so fundamental that even Defendants' own policies, which claim to be designed to "ensure that internal investigations are fairly, uniformly and thoroughly conducted", provide that such investigations should be completed in a "timely manner" and, more specifically, that such investigations should be completed "not later than 60 days from assignment ... to an investigator, with some extensions permitted." Defendants's Exh. 1 at 619, 629 and 633.

In the instant case, the investigation, from assignment to an investigator on March 28,

---

[4] Notably, if the "justification" <u>had</u> addressed Lynch's claim that Attorney McNamara in fact authorized Lynch to release Rodriguez, then there is no possible way that said "justification" could have supported sustaining the charge that Lynch violated Defendants' "Release of Prisoners" policy. This is true because the investigator who investigated Lynch's claim that Attorney McNamara in fact authorized Lynch to release Rodriguez specifically found that Lynch's claim in this regard was believable and that McNamara's denial was not believable. Defendant's SMF ¶ 66.

2001, Defendant's SMF ¶ 49, to imposition of discipline on April 30, 2002, Defendant's SMF ¶ 86, took 393 days!

Even assuming that, "some extension" of the 60 day requirement might have been necessary in Lynch's case, surely Defendants' right to "some extension" of the 60 day period cannot reasonably be construed as allowing for a <u>twelve-fold</u>, or <u>three-hundred-and-thirty-three-day</u> extension of said period especially where, as here, Lynch never consented to any extension of the 60 day period, and Lynch regularly complained that the investigation was taking so long. Lynch Aff. ¶¶ 5B and 5C. <u>See</u> also <u>id</u>. ¶ ("In my nearly 17 years as an employee of the Connecticut State Police, I learned of some internal investigations which took slightly longer than the standard 60 days to complete, but I never heard of an internal investigation which took anywhere near 393 days to complete").

Based on the above, a reasonable jury could easily find that Defendants failed to afford Lynch his due process right to be heard within a "meaningful time."

II.     **AS TO DEFENDANTS' REMAINING ARGUMENTS.**

   A.

In its Memorandum at 22, Defendants claim that Lynch's claims fail because Lynch "had and utilized an adequate post-deprivation remedy." Defendants claim in this regard fails for at least 3 reasons:

First, Defendants failed to set up this affirmative defense in their Answer (or in an Amended Answer), as required by Fed. R. Civ. P. 8(c). Their failure to do so constitutes a waiver of that defense. <u>Satchell v. Dilworth</u>, 745 F.2d 781, 784 (2d Cir. 1984).

Second, notwithstanding Defendants' assertions to the contrary, a plaintiff in a section

1983 case is <u>not</u> required to exhaust his administrative remedies before bringing suit <u>unless</u> the remedy plaintiff is seeking in said suit is "the right to be heard." <u>See</u> <u>Russo v. City of Hartford</u>, 136 F.Supp.3d _ (D. Conn. 2001) (and case cited therein).  In the instant case, the remedy Lynch is seeking is not"the right to be heard," because, as the facts reveal, that right was in fact afforded to Lynch.  Rather, Lynch is seeking the remedies of: (1) reversal of Defendants' decision to sustain the charge of violating Defendants' "Release of Prisoners" policy and (2) compensation for being denied the due process rights of (a) receiving notice, (b) receiving a decision that was actually justified by the facts, (c) receiving a decision within a meaningful time.  As Lynch is not seeking in this suit the remedy of "the right to be heard," he was not required to exhaust his administrative remedies before brining suit.

  Finally, the grievance procedure which Defendants deem "an adequate post-deprivation remedy" was not an adequate remedy at all.  In this regard, <u>see</u> Lynch Aff. ¶ 6 ("I settled my grievance in the way that I did because my Labor Agent, Jerry Maguire, specifically told me that the grievance procedure, while empowered to provide an employee with certain remedies, was simply not empowered to provide an employee with the remedies that I sought: (1) reversal of Defendants' decision to sustain the charge of violating Defendants' "Release of Prisoners" policy and (2) compensation for being denied my due process rights of (a) receiving notice, (b) receiving a decision that was actually justified by the facts, (c) receiving a decision within a meaningful time, etc.") and ¶ 7 ("Maguire told me that the settlement I made was the best that I could do under the grievance procedures, and that, to obtain the other remedies I sought, I would need to file an action in court.").

  Based on the above, Defendants claim that Lynch's claims fail because "Plaintiff had and

utilized an adequate post-deprivation remedy" fails as a matter of law.

B.

On Pages 24 - 26 of its Memorandum, Defendants' claim that Colonel Barry was not sufficiently personally involved to support a finding of liability. This claim fails for the simple reason that, in Defendants' SMF ¶¶ 16 - 19, Defendants expressly admit that Colonel Barry was in fact personally involved in that (a) Colonel Barry was responsible for the ultimate disposition of the Lynch investigation, (b) Colonel Barry had final say as to the result of the Lynch investigation, etc.

C.

On Pages 24 - 26 of its Memorandum, Defendants claim that Major Griffin was not sufficiently personally involved to support a finding of liability. This claim fails for the simple reason that Major Griffin is the person who disciplined Lynch. Defendants' SMF ¶ 86.

D.

On Pages 26 - 27 of its Memorandum, Defendants discuss Lynch's claims against Defendant McNamara. Notably, Defendants do not dispute that a reasonable jury could find that McNamara failed to afford Lynch due process of law. Instead, Defendants baldly contend that McNamara is entitled to "absolute immunity" because any wrongful conduct by McNamara's occurred when she was a <u>witness</u> in the <u>internal investigation</u>. Defendants' argument in this regard fails for the simple reason that, while Defendants have provided much authority for the proposition that a witness in a <u>judicial</u> proceeding may be entitled to "absolute immunity," Defendants have not provided any authority whatsoever to supports its bald contention that a witness in an <u>internal investigation</u> is likewise entitled to "absolute immunity."

E.

Defendants can prevail on their "qualified immunity" defenses by proving that the constitutional rights they violated were not clearly established. However, as already noted, at the time of the internal investigation (2001 - 2002), the right to notice, the right to a decision that was actually justified by the facts and the right to receive a decision within a meaningful time were all clearly established constitutional rights. See e.g. <u>Cleveland Bd. Of Educ. V. Loudermill</u>, 470 U.S. 532 (1985); <u>Armstrong v. Manzo</u>, 380 US 545, 552 (1965).

Defendants can also prevail on their "qualified immunity" defenses by proving that it was objectively reasonable for them to believe that their actions were lawful. <u>Cerrone v. Brown</u>, 246 F.3d 194 (2nd. Cir. 2001). Based on the facts and argument, as outlined above, Plaintiff submits that a reasonable jury could easily find that it simply would not have been <u>objectively</u> reasonable for Defendants to have believed that failing to provide notice, failing to render a decision that was actually justified by the facts, and failing to render a decision within a meaningful time were somehow lawful.

Based on the above, a reasonable jury could easily find Defendants liable under 42 USC 1983.

## **CONCLUSION**

For the foregoing reasons, Lynch respectfully requests that Defendants' Motion for Summary Judgment be DENIED.

Respectfully submitted,

_____
**Todd Lynch,**
**By one of his attorneys:**
Sebastian O. DeSantis, FBN CT20116
Sabilia, DeSantis & Waggoner, LLC
247 Shaw Street
New London, CT 06320
860.444.0144

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document, along with (a) a true copy of the Declaration of Todd Lynch and (b) a true copy of Plaintiff's Response to Defendants' Statement of Material Facts and Plaintiff's Statement of Material Facts was served by mail on April 29, 2004 to:

| | |
|---|---|
| Clare E. Kindall (FBN 13688)<br>Assistant Attorney General<br>55 Elm Street, P.O. Box 120<br>Hartford, CT 06141-0120<br>Tel: (860) 808-5020, Fax: (860) 808-5347<br>Clare.Kindall@po.state.ct.us<br>Federal Bar No. ct 13688 | Gilbert Shasha<br>P.O. Box 1736<br>New London, CT 06320 |

Mark P. Kindall (FBN 13797)
Assistant Attorney General
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5020, Fax: (860) 808-5347
Mark.Kindall@po.state.ct.us

_____
Sebastian O. DeSantis