UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TODD LYNCH, | : | CIVIL ACTION NO. 3:03CV0381(MRK) |
|    *Plaintiff,* | : | |
| | : | |
|    *v.* | : | |
| | : | |
| KATHY MCNAMARA, | : | |
| TIMOTHY BARRY, and | : | |
| FRANK GRIFFIN, in their individual | : | |
| Capacities | : | |
|    *Defendants.* | : | MAY 25, 2004 |

## DEFENDANTS' REPLY BRIEF

Plaintiff's response to the defendants' motion for summary judgment fails to address several critical facts, and several key legal arguments, set forth in the defendants' brief.

**A.  The Plaintiff Has Not Identified a Protected Property Interest**

Plaintiff claims that he has a constitutionally protected property interest in his position on the Statewide Firearms Task Force,[1] because the collective bargaining agreement requires that "disciplinary transfers" meet a just cause standard. Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Brief"), at 4-5. Plaintiff cites *Moffitt* v. *Town of Brookfield*, 950 F.2d 880 (2d Cir. 1991), which involved a union contract that prohibited termination without just cause. The "property interest" in *Moffitt* was continued employment, and the "just cause" standard gave that interest constitutional protection. The plaintiff has no equivalent right to a position on the Statewide Task Force. He can be transferred at any time, without cause, for

---

[1] Plaintiff's interest in his position with the Statewide Task Force is the only basis for his due process claim that he identifies in his brief. Having thus focused the inquiry, plaintiff has abandoned any other claims of a liberty or property interest. *See, e.g., Grenier* v. *Cyanamid Plastics,* 70 F.3d 667, 678 (1st Cir. 1995) (If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived). In particular, the plaintiff appears to have abandoned any claim that he had a protected liberty or property interest in overtime hours, or being free from oral counseling memoranda.

administrative reasons. See Exh. 2, p. 26 (union contract provides that the "just cause" standard applies *only* to disciplinary transfers).[2]

The plaintiff's contract does not require "just cause" to transfer an officer; rather, it requires just cause before he is *disciplined*. However, as the defendants noted in their principal brief, "[n]ot every contractual benefit rises to the level of a constitutionally protected property interest." *Ezekwo* v. *NYC Health & Hosp. Corp.,* 940 F.2d 775, 782 (2d Cir.), *cert. denied,* 502 U.S. 1013 (1991).[3] The *Ezekwo* court identified two factors to consider in determining which interests should be protected: "whether the interest would be protected under state law *and . . . the importance to the holder of the right.*" *Id*. at 783 (emphasis added, internal quotations and citations omitted). Unless discipline is coupled with some material loss of benefits, it cannot be equated with property rights that merit constitutional protection. *See, e.g., Williams* v. *Pennsylvania State Police,* 108 F. Supp. 2d 460, 470 (E.D. Pa. 2000) (placement on restricted duty, confiscation of badge, gun, and state vehicle "far less substantial than termination, formal demotion, or suspension without pay"; while it might be considered an adverse employment action, court concluded "it does not rise to the level of a *constitutional* deprivation.").

**B.     The Plaintiff Was Not Deprived of His Alleged Property Interest**

Plaintiff argues that a jury "would be required to find" that the defendants deprived him of his property interest in his position with the Statewide Task Force by virtue of the fact that

---

[2] Plaintiff also cites *Russo* v. *City of Hartford*. Plaintiff's Brief, at 4. The citation that the plaintiff provides does not appear to be correct, and, as there are more decisions than one bearing that name, it is difficult to tell precisely which is intended. However, based upon the year provided, plaintiff is referring to the decision on motions to dismiss, found at 158 F. Supp. 2d 214 (D. Conn. 2001). At the pleadings stage, the court was unwilling to say "beyond a doubt" that the plaintiff might not possibly be able to establish some right to the type of work he was doing. *Id*. at 224. This is no longer the pleadings stage; the plaintiff must establish his property interest with facts and evidence, and he has not done so.

[3] In *Gilbert* v. *Homar*, 520 U.S. 924, 928-29 (1997), the Supreme Court assumed, without deciding, that the Due Process Clause might extend to discipline of a public employee short of termination. Since the issue was not briefed, the Court did not decide it, and the question remains open.

they issued him a disciplinary transfer. Plaintiff's Brief, at 5. Even assuming, arguendo, that he has a protected property interest in his position on the Task Force, the plaintiff's argument ignores two salient facts. First, the plaintiff was not *compelled* to leave the Task Force, he did so voluntarily in 2001,[4] long before a decision was made with respect to the internal affairs investigation. The "discipline" imposed in April of 2002, thus, was not causally related to Lynch's actual move from the Task Force to another unit.

Second, the plaintiff was not, ultimately, subject to a "disciplinary transfer." It is undisputed that he timely filed a grievance after the decision, and, as a result of the settlement of the grievance, his transfer was designated "administrative." SMF ¶ 95. When making a due process claim, a plaintiff cannot protest a result that did not survive the process that was provided. *See, e.g., Hudson* v. *Palmer,* 468 U.S. 517, 539 (1984) (O'Connor, *J.*, concurring) ("When adequate remedies are provided and followed, no uncompensated taking or deprivation of property without due process can result."); *see also Holland* v. *Rimmer*, 25 F.3d 1251, 1256 (4th Cir. 1994) (termination without notice did not deprive plaintiff of property interest, when termination was subsequently rescinded and plaintiff was awarded full back pay), *citing Sewell* v. *Jefferson County Fiscal Court,* 863 F.2d 461, 467 (6th Cir. 1988), *cert. denied,* 493 U.S. 820 (1989), and *Gearhart* v. *Thorne*, 768 F.2d 1072, 1073 (9th Cir. 1985).[5]

---

[4] Although paragraph 4 of the plaintiff's 56(a)(2) statement indicates that Lynch was "pressured" to transfer, the citation is to the transcript of Lynch's deposition, Exh. G, pages 47-48, where the plaintiff indicates that he felt pressure because he was the subject of two investigations. Lynch asked then-Col. Bardelli whether it would be better, "for everyone's sake," if he transferred out of the unit. Bardelli thought it was a good idea, so Lynch accordingly requested, and obtained, a transfer. There is nothing to suggest that Bardelli, let alone any of the defendants, pressured Lynch to request the transfer.

[5] Rather than finding that the plaintiff had not been deprived of property, the *Gearhart* court determined that the subsequent corrective measures satisfied whatever process was due. 768 F.2d at 1073. *Archuleta* v. *Colorado Dept. of Institutions,* 936 F.2d 483, 491 (10th Cir. 1991) is in accord with this approach. Regardless of where it fits in the analytical framework, however, the end result is the same: a plaintiff simply cannot maintain a suit for deprivation of due process when the property interest at stake was ultimately restored.

Since the plaintiff's success in reversing the disciplinary action against him plainly bars the instant suit, the plaintiff would have this Court ignore it. Plaintiff argues that the defendants failed to include this as an affirmative defense, that he is, in any event, not required to exhaust administrative remedies, and that the administrative remedies are not adequate. *See* Plaintiff's Brief, at 11-13. These arguments are unavailing; the law does not require the Court to blind itself to the facts. The adequacy of post-deprivation procedure is not an affirmative defense; in a due process suit, the plaintiff bears the burden of demonstrating the inadequacy of the process he was given. *Marino* v. *Ameruso,* 837 F.2d 45, 47 (2d Cir. 1988). Second, the plaintiff need not exhaust his administrative remedies, but their existence *is* relevant to whether he was accorded all of the process that was due. *Marino,* 837 F.2d at 47. Finally, the Supreme Court has plainly indicated that an administrative process that provides for restoration of the property interest in question is adequate, even if it does not provide all of the remedies that might be available in a Section 1983 action.[6]

The defendants were not responsible for the plaintiff's decision to request a transfer, and the plaintiff's "discipline" was ultimately reversed  Consequently, the plaintiff cannot establish that the defendants deprived him of any property interest.

    **C.**    **Plaintiff Was Given More Process Than The Constitution Requires**

Even were one to assume that the plaintiff had a property interest in a position on the Task Force, and to assume further that this interest was taken away by the discipline imposed as

---

[6] *Parratt* v. *Taylor,* 451 U.S. 527, 544 (1981), *overruled in part on other grounds, Daniel* v. *Williams,* 474 U.S. 327 (1986). Plaintiff argues, based upon inadmissible hearsay evidence about statements of Jerry McGuire, that he could not have obtained compensatory damages through his grievance, a claim foreclosed by *Parratt.* Plaintiff's Brief, at 12. He also claims that an arbitrator could not reverse the finding of violation in the IA. *Id.* An arbitrator could, at least, reverse any discipline that resulted from the finding of violation, which is more than this Court can do in a Section 1983 action against defendants *in their individual capacities. See Knox* v. *McGinnis,* 998 F.2d 1405, 1413 (7th Cir. 1993) (injunctive relief available against state officers in their *official,* not *individual* capacities.

4

a result of the Rodriguez IA, the "process" that the plaintiff received clearly meets or exceeds constitutional requirements. Plaintiff concedes that he had ample "opportunity to be heard." Plaintiff's Brief, at 12. He further concedes that he was provided with a copy of the complaint against him the day after it was received by the Department. SMF ¶ 50. Barred from arguing that he was denied timely notice and opportunity to be heard, the plaintiff contends (1) that the content of the notice was inadequate; (2) that the investigation took too long; and (3) that the finding of violation was not supported by the evidence. Plaintiff's Brief, at 6-11. None of these contentions has merit.

*Content of the Notice:* Plaintiff complains that he did not receive notice of the charge that was ultimately sustained – a finding that he violated the Department's "un-arrest" policy. Plaintiff's Brief, at 6-8. This argument ignores several important uncontested facts.

The initial notice, based on the complaint by Mr. Rodriguez, advised the plaintiff that the Department was investigating a charge that Rodriguez "was handcuffed and detained for an extended period of time and later released without being arrested." SMF ¶ 46. Plaintiff claims that "logic dictates" that this charge "simply could not have given Lynch notice that he was being charged with a violation of" the unarrest policy because it "contains the specific allegation that the suspect was <u>not</u> arrested. Plaintiff's Brief, at 8. This is mere sophistry. As a police officer, Lynch was aware that Rodriguez was under arrest from the moment that he was placed in handcuffs at his girlfriend's residence. This is clear from the plaintiff's first interview. Exh. 15, at 11. Despite that knowledge, Lynch personally told Rodriguez at the time of his release "that he wasn't going to be arrested at this time." Exh. 15, at 23. It is scarcely surprising, therefore, that Rodriguez couched his complaint in the fashion that he did. The key facts – custodial

5

detention and subsequent release – are clear from the complaint.  The plaintiff could not have been unaware of the conduct that was under investigation.

The undisputed facts also do not support the plaintiff's contention that the initial complaint was the "sole method by which Defendants provided Lynch with notice of the charges against him . . . ."  Plaintiff's Brief, at 6.[7]  After receiving the initial notice of the complaint against him, the plaintiff was interviewed on two separate occasions and given an opportunity to tell his side of the story concerning the arrest and release of Rodriguez.  On both occasions, the assigned investigator asked about the "unarrest" issue, and on both occasions Sgt. Lynch indicated that the State's Attorney's Office had authorized Rodriguez' release, and that he did not consider it to be an "unarrest." Exh. 15, at 24-25; Exh. 21, at 42.[8]  Thus, Lynch was specifically given oral notice, in his August 1, 2001, and February 13, 2002, interviews, that the Department was looking into whether he had violated the "unarrest" policy.

In addition to the notice provided to the plaintiff through his two interviews, he was also given a full copy of the investigation report, including the sustained charge, on or about April 25, 2002, along with a "Notice of Intent to Discipline" which specified the violations which the Department's investigation had revealed.  SMF ¶ 85; Exh. 26.  The notice required the plaintiff to report to Major Griffin five days later, on April 30, to discuss the discipline to be imposed. Exh. 26.  The plaintiff exercised his right to bring a union representative to the April 30 meeting, and the discipline was imposed at that time.  SMF ¶ 86.

When these notices are compared to the constitutional requirements for due process, it is clear that the plaintiff cannot prevail.  Notice need not be in writing, it may be oral.  *Cleveland*

---

[7] Plaintiff includes the allegation about "sole method" as an undisputed fact, based upon an affidavit from Lynch himself.  See Plaintiff's 56(c)(2) Statement, Part 2, ¶ 4, and attached Affidavit of Todd Lynch. However, a plaintiff cannot create disputed material facts with an affidavit that contradicts his earlier deposition testimony.  *Brown* v. *Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

*Bd. of Educ.* v. *Loudermill*, 470 U.S. 532, 546 (1985).  Notice is sufficient "if it apprises the vulnerable party of the nature of the charges and general evidence against him".  *Gniotek* v. *Philadelphia*, 808 F.2d 241, 244 (3d Cir. 1986), *cert. denied*, 481 U.S. 1050 (1987); *see also Linton* v. *Fredrick County Bd. of County Comm'rs*, 964 F.2d 1436, 1439 (4th Cir. 1992) (same).  The complaint clearly apprised Lynch that the propriety of his release of Rodriguez was being investigated, even if the term "unarrest" was not used.  If he were confused about this in any way, the two interviews clearly gave him oral notice that the Department was evaluating the applicability of the unarrest policy to his release of Rodriguez.  Finally, he received full written notice of the charges, including the full investigative report, five days prior to the meeting where discipline was imposed.  This level of notice and opportunity to be heard would have been sufficient even if the plaintiff had been terminated; *Loudermill* itself requires nothing more, so long as post-deprivation process is adequate.[9]

The *purpose* of imposing pre-deprivation procedural safeguards in *Loudermill* was to reduce the risk of erroneous deprivations of property rights by allowing the party holding the right an opportunity to tell his side of the story before disciplinary action is taken.  *Loudermill,* 470 U.S. at 543.  That purpose was plainly satisfied in the instant case.  Plaintiff never indicates what additional facts he would have brought to the attention of the defendants had he been told, on day one, that the Department was investigating a charge that he violated the "unarrest" policy.

---

[8] Plaintiff does not contest the accuracy of the transcripts of the two interviews.  SMF ¶¶ 53, 75.

[9] There can be no serious question as to the adequacy of plaintiff's post-disciplinary process.  *See supra* note 6 and accompanying text; *see also* Exh. 2 at 20-21.  The efficacy of these procedures is amply demonstrated by the results in this case:  the only "discipline" imposed was effectively revoked.  As Judge Easterbrook observed in similar circumstances, "[o]nly when he had harvested the benefits [of his settlement] did he seek to avoid the detriments."  It is "far to late to sing a new song" when he filed a complaint, "not at least, without tendering back to the [employer] the consideration he received.  *Graehling* v. *Village of Lombard,* 58 F.3d 295, 298 (7th Cir. 1995).  Sgt. Lynch has not offered to "tender back" the benefit he received from his settlement agreement, restoring the "disciplinary transfer" to his records.

He presents the same rationale for releasing Rodriguez in his brief to this Court that he gave to the Department's investigators in 2001 and 2002. *Compare* Plaintiff's Brief, at 9-10, with Exh. 15, at 24-25; Exh. 21, at 42.

*Length of the Investigation:* Plaintiff argues that the length of the investigation deprived him of due process, citing *Loudermill* and *Armstrong* v. *Manzo,* 380 U.S. 545, 552 (1965) for the proposition that due process requires the right to be heard "at a meaningful time." In both cases, however, the plaintiff had been deprived of rights without notice and an opportunity to be heard. Here, plaintiff is not complaining about the length of time between the alleged deprivation of his putative "property interest" and his right to be heard. Rather, he is challenging the length of time between accusation and deprivation. Since the plaintiff received an opportunity to be heard, both before *and* directly after, his discipline, due process requirements are met.[10]

*Support for Finding of Violation:* The plaintiff claims that the facts relied upon by the defendants do not support their finding that he violated the Department's "unarrest" policy. Plaintiff's Brief, at 8-9. As a matter of *procedure*, however, the plaintiff had ample opportunity to contest the basis for any discipline imposed through the grievance process. Thus, even if there were errors in the original determination, a process existed to correct them and the due process clause requires no more.[11]

Moreover, and perhaps ultimately more importantly, the finding of violation is amply supported by the undisputed facts. Lynch concedes that he arrested Rodriguez, that he

---

[10] Plaintiff claims that the length of the investigation violated the Department's policy, as set out in its A&O Manual. Plaintiff's Brief, at 10. It did not; the time limits in the policy are clearly hortatory rather than mandatory. *See* Exh. 1, at 10. Moreover, even if the defendants *had* failed to follow their policy, the plaintiff's constitutional claim would be no stronger. *See Thomas* v. *Zaharek,* 289 F. Supp. 2d 167, 178 (D. Conn. 2003) (a state can "fail to follow its own procedures yet still provide sufficient process to survive constitutional scrutiny"), *quoting Rogers* v. *Okin,* 738 F.2d 1, 8 (1st Cir. 1984).

[11] *See Munafo* v. *Metropolitan Transit Authority,* 285 F.3d 201, 213-14 (2d Cir. 2002) (upholding summary judgment where employee had procedures available to correct allegedly erroneous decision).

8

subsequently released him, and that his only alleged "authorization" for doing so came from the State's Attorney's Office. It is undisputed that the section of the Department's A&O Manual on "release of prisoners" provides that "no arrest shall be voided, reduced, or dismissed against a suspect except by authorization of the court of jurisdiction . . . ." SMF ¶ 48. Even accepting as true the plaintiff's contested allegation that he received authorization from the State's Attorneys' Office, that office does not constitute a "court of jurisdiction." While state's attorneys – and, for that matter, all attorneys – are "officers of the court," they are not courts themselves. When the A&O Manual refers to state's attorneys, it uses the normal terminology. *See, e.g.,* Exh. 3, p. § 19.1.16(c)(2)(f) ("submit a copy of the report to an appropriate state's attorney."). Thus, the undisputed facts demonstrate that the plaintiff violated the rule.

### D.     Immunity Issues

Plaintiff argues that "Defendants have not provided any authority whatsoever to [support their] bald contention that a witness in an internal investigation is likewise entitled to 'absolute immunity'", and therefore, he argues that Assistant State's Attorney McNamara is not entitled to such immunity for her testimony.

Plaintiff has not claimed that Defendant McNamara did not give him notice or an opportunity to be heard, because, quite obviously, she was in no position to do either. Rather, his sole claim against her is his allegation that she lied during the Department's IA investigation. This cannot be a due process violation, and the Court would be justified in dismissing it accordingly. If anything, the plaintiff's claim sounds in defamation – a tort governed, not by federal law, but by Connecticut common law. This Court has held that Connecticut extends absolute immunity to testimony given in "'quasi-judicial' proceedings of 'administrative officers . . . so long as they have powers of discretion in applying the law to the facts . . . ."

9

*Blake-McIntosh* v. *Cadbury Beverages, Inc.,* 1999 U.S. Dist. LEXIS 12801, *20 (D. Conn., June 25, 1999), *quoting Petyan* v. *Ellis,* 200 Conn. 243, 245-46, 510 A.2d 1337, 1338 (1986). Subsequent to this Court's decision in *Blake-McIntosh,* the Connecticut Appellate Court specifically extended absolute immunity to statements provided during an internal affairs investigation by the Hartford Police. *Craig* v. *Stafford Construction, Inc.*, 78 Conn. App. 549, 827 A.2d 793 (2003), *certif. granted,* 266 Conn. 916, 833 A.2d 466 (2003). In a comprehensive opinion by former Chief Justice Peters, the Court found that the detailed procedures of an internal affairs investigation, designed to investigate and ascertain facts, were "quasi-judicial" in nature, and that absolute immunity was required because of "the importance of protecting the rights of citizens to voice complaints against police officers." *Id.* at 557-58, 827 A.2d at 798-99.

The plaintiff also argues that the defendants are not entitled to qualified immunity because "the right to notice, the right to a decision that was actually justified by the facts and the right to receive a decision within a meaningful time were all clearly established", and that "a reasonable jury could easily find that it simply would not have been objectively reasonable" for the defendants to believe that violating these rights was somehow lawful. Plaintiffs' Brief, at 14. This completely misstates the law of qualified immunity, transforming it "into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Anderson* v. *Creighton,* 483 U.S. 635, 639-40 (1987). Qualified immunity attaches unless it is apparent, based on pre-existing law, that the action in question is unlawful. *Id.* Furthermore, the applicability of qualified immunity is generally a question for the Court, not for a "reasonable jury." *See, e.g., Stephenson* v. *Doe,* 332 F.3d 68, 80-81 (2d Cir. 2003). For the reasons set forth in the defendants' principal brief, and above, the defendants are entitled to qualified immunity even if the court *were* to find a constitutional violation.

10

                                        DEFENDANTS Kathy McNamara, Timothy Barry and Frank Griffin in their individual capacities

                                        RICHARD BLUMENTHAL
                                        ATTORNEY GENERAL

BY: _____
       Mark P. Kindall
       Assistant Attorney General
       Federal Bar No. ct13797
       55 Elm Street, P.O. Box 120
       Hartford, CT 06141-0120
       Tel: (860) 808-5340
       Fax: (860) 808-5383
       Mark.Kindall@po.state.ct.us

## CERTIFICATION

       I hereby certify that a true and accurate copy of the foregoing Defendants' Reply Brief was served by first-class mail, postage prepaid, in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 25th day of May, 2004 to:

| | |
|---|---|
| Sebastian O. DeSantis, Esq. | Gilbert Shasha, Esq. |
| Sabilia & DeSantis, LLC | 37 Granite Street |
| 247 Shaw Street | P.O. Box 1736 |
| P.O. Drawer 191 | New London, CT 06320 |
| New London, CT 06320 | |

And by interoffice mail to:

    Clare E. Kindall, AAG
    Office of the Attorney General
    55 Elm Street, 4th floor
    Hartford, CT 06106

                                        _____
                                        Mark P. Kindall
                                        Assistant Attorney General