UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TODD LYNCH, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :    CIVIL NO. 3:03CV381 (MRK) |
| | : |
| KATHY MCNAMARA, | : |
| TIMOTHY BARRY, and FRANK GRIFFIN, | : |
| in their individual capacities, | : |
| | : |
| Defendants. | : |

## MEMORANDUM OF DECISION

Plaintiff, State Police Sergeant Todd Lynch, has sued two fellow State Police Officers and an Assistant State's Attorney under 42 U.S.C. § 1983, for allegedly violating his due process rights under the Fourteenth Amendment. Sgt. Lynch's claim arises from a State Police investigation of a citizen complaint against him. Presently before the Court is the Defendants' Motion for Summary Judgement [doc. #34]. For the reasons stated below, the Court GRANTS Defendants' motion.

**I.**

The relevant facts are drawn from the parties' pleadings and attached exhibits submitted in connection with the pending motions.[1] All facts are undisputed unless otherwise noted. Sgt.

---

[1] These pleadings consist of the following: Defendants' Notice of Removal [doc. #1] ("Not. of Rem."); Plaintiff's Amended Complaint [doc. #14] ("Pl.'s Am. Compl."); Defendants' Memorandum of Law in Support of Motion for Summary Judgment [doc. #35] ("Defs.' Mem. of Law"); Defendants' Local Rule 56(a)1 Statement [doc. #36] ("Defs.' 56(a)1 Statement"); Defendants' Testimentary Exhibits in Support of Defendant's Motion for Summary Judgment and Statement of Material Facts Not in Dispute [doc. #37] ("Def's Test. Exs."); Defendants' Evidentiary Exhibits in Support of Defendant's Motion for Summary Judgment and Statement of Material Facts Not in Dispute [doc. #38] ("Defs.' Evid. Exs.");  Plaintiff's Opposition to Defendants' Motion for Summary Judgment [doc. #43] ("Pl.'s Opp. Brief"); Plaintiff's Local Rule 56 Statement [doc. ## 44-45] ("Pl.'s 56(a)2 Statement"); Defendants' Reply Brief [doc. #50] ("Defs.' Reply").

Lynch has been employed by the Connecticut State Police Department since September 1987. Defs.' 56(a)1 Statement ¶1. In July 2000, he joined the Statewide Firearms Trafficking Task Force ("Task Force"). Defs.' 56(a)1 Statement ¶ 3. Sgt. Lynch is a member of the State Police Union Bargaining Unit. Defs.' 56(a)1 Statement ¶ 7.

**The Rodriguez Complaint**. During the evening of November 28, 2000 and while a member of the Task Force, Sgt. Lynch arrested Ruben Rodriguez, who was suspected of being an unauthorized gun dealer. Defs.' 56(a)1 Statement ¶ 36. The standard procedure for making an arrest is to bring the arrestee to a police station or troop barracks, read him his rights, fingerprint and photograph him, and log him into a cell and/or release him on bond. Defs.' 56(a)1 Statement ¶ 38.

Rather than bring Mr. Rodriguez to the State Police barracks to be processed, however, Sgt. Lynch took him to the Task Force's offices. There, Lynch read Mr. Rodriguez read his rights and informed him of the charges against him, but did not perform the other standard arrest procedures. Defs.' 56(a)1 Statement ¶ 39. While at the Task Force's offices, Mr. Rodriguez eventually confessed to the crime. Defs.' 56(a)1 Statement ¶ 40. At that point, Sgt. Lynch signed Mr. Rodriguez up as a confidential informant and released him. Defs.' 56(a)1 Statement ¶ 41. However, Sgt. Lynch did not document his arrest or subsequent release of Mr. Rodriguez. Defs.' 56(a)1 Statement ¶ 42-43. Sgt. Lynch claims that he released Mr. Rodriguez under the direction of Assistant State's Attorney Cathy McNamara, after making a telephone call to her house. Defs.' 56(a)1 Statement ¶ 44. Assistant State's Attorney McNamara denies knowing that Mr. Rodriguez was under arrest when she spoke with the Task Force. Defs.' 56(a)1 Statement ¶ 45.

On March 28, 2001, Mr. Rodriguez made a citizen complaint against Sgt. Lynch. As set forth in the written report of his complaint, Mr. Rodriguez made:

> Allegations of improper arrest/detaining of subject and threats toward subject in order to obtain written statement. Also allegations of conducting a search of a residence without proper consent and failure to maintain the privacy of a registered "confidential informant."

Defs.' 56(a)1 Statement ¶ 46; Ex. 13 [doc. #38] at 2.

**The Internal Investigation.** As a result of Mr. Rodriguez's complaint, the State Police Committee on Internal Affairs ("IA") undertook an internal investigation. Chapter 5 of the State Police Administrative & Operations ("A&O") policy manual outlines the procedures for internal investigations. Defs.' 56(a)1 Statement ¶ 8. The A&O policy manual requires that all citizen complaints reduced to writing be thoroughly investigated; the more serious complaints, such as Mr. Rodriguez's, are typically investigated by the Internal Affairs ("IA") Unit. Defs.' 56(a)1 Statement ¶¶ 9, 13. Unless a complaint alleges that a crime has been committed, the A&O policy manual requires that the employee under investigation be given written notice of the complaint made against her. Defs.' 56(a)1 Statement ¶ 20. An investigator in the IA Unit is assigned to the complaint, and he must prepare a report of her conclusions and findings. The investigator's report and conclusions are then forwarded up the chain of command and each command level must sign-off on the report. Defs.' 56(a)1 Statement ¶ 14. The Commissioner designates a commander or manager to make the ultimate disposition of the investigation. Defs.' 56(a)1 Statement ¶ 16. For the Rodriguez IA investigation, this responsibility belonged to Defendant Col. Timothy Barry. Defs.' 56(a)1 Statement ¶ 17.

On March 27, 2001, Sgt. Paul Kenefick was assigned to investigate the complaint

involving Sgt. Lynch, and on March 29, Sgt. Lynch was provided with a hand-delivered copy of Mr. Rodriguez's complaint. Defs.' 56(a)1 Statement ¶¶ 49-50. Sgt. Kenefick interviewed 11 witnesses during his investigation. He interviewed Sgt. Lynch on August 1, 2001 and a union representative, Jeremiah McGuire, accompanied Sgt. Lynch during the interview. Defs.' 56(a)1 Statement ¶¶ 53-54. On November 6, 2001, Sgt. Kenefick submitted his report on the investigation. The report exonerated Sgt. Lynch on Mr. Rodriguez's complaints. Defs.' 56(a)1 Statement ¶¶ 57-58.

As was required by internal procedures, Sgt. Kenefick submitted his report to his immediate supervisor, Lt. Kasacek, who disagreed with his conclusion regarding the "un-arrest" of Mr. Rodriguez. Defs.' 56(a)1 Statement ¶ 59. The A&O policy manual has a procedure to address an "un-arrest" of prisoners. Section 19.1.16(a)(2) states, "No arrest shall be voided, reduced, or dismissed against a suspect except by the court of jurisdiction (except 19.1.18c). In all other situations officers may not 'un-arrest' anyone." *See* Ex. 3 [doc. #38]. Sgt. Kenefick was not convinced that Sgt. Lynch violated the "un-arrest" policy because he felt that the permission given by Assistant State's Attorney McNamara could be interpreted to satisfy the "court of jurisdiction" requirement in the policy. Kenefick Dep., Ex. F [doc. #37] at 45-46. Lt. Kasacek on the other hand, had "no doubt" that Sgt. Lynch violated the policy. Kasacek Aff., Ex. A [doc. #37] ¶ 30.[2]

On or about November 6, 2001 Lt. Kasacek contacted the Department's Labor Relations ("LR") Unit for guidance regarding Sgt. Lynch's custodial detention and un-arrest, or release, of

---

[2] The un-arrest policy is sometimes referred to as "19.1.16c" in Defendants' exhibits, but it seems clear from actual the text excerpted that Defendants' meant 19.1.16(a)(2).

Mr. Rodriguez and his failure to document these actions. Defs.' 56(a)1 Statement ¶ 60. Two weeks later, on or about November 20, the LR Unit advised the investigators that an additional violation of failing to document the activities of November 28, 2000 should be sustained, and Capt. Samuels signed off on the report and sent it to Capt. Sweetman for final review.[3] Defs.' 56(a)1 Statement ¶¶ 61-62. After reviewing the report, Capt. Sweetman sent the report back to the IA Unit with instructions to add Sgt. Lynch's supervisor, Lt. Thomas Hogarty, as an additional subject of the investigation. Defs.' 56(a)1 Statement ¶ 68.

In December 2001, Lt. Kasacek assumed primary responsibility for the expanded investigation that lasted until January 2002. Defs.' 56(a)1 Statement ¶¶ 69-70. Lt. Kasacek interviewed Assistant State's Attorney McNamara on January 24, 2002. Defs.' 56(a)1 Statement ¶ 72. Soon afterwards, on or about January 28, the investigation was re-assigned once again – this time to Capt. Lacaprucia but with Lt. Kasacek's continued assistance. Both Capt. Lacaprucia and Lt. Kasacek agreed that both subjects of the investigation needed to be re-interviewed, and Sgt. Lynch was interviewed for a second time on February 13, 2002. Defs.' 56(a)1 Statement ¶¶ 73-74. Before the February 2002 interview, Sgt. Lynch was provided with a transcript of his prior August 2001 interview. Defs.' 56(a)1 Statement ¶¶ 75-76.

On or about March 19, 2002, Lt. Kasacek and Capt. Lacaprucia submitted their report on the investigation. They concluded that the improper arrest, improper consent to search, and decorum charges against Sgt. Lynch were unfounded or not sustained. However, they also recommended that the un-arrest charge for improperly releasing prisoners in violation of section

---

[3] Capt. Sweetman is Col. Barry's chief of staff and he is responsible for reviewing all completed internal investigations before submitting them to Col. Barry for action. *See* Griffin Interrog., Ex. D [doc. #37] at 3.

19.1.16(a)(2) be sustained. On or about April 9, 2002, Col. Barry agreed with their conclusions and sustained the charge against Sgt. Lynch for improperly releasing a prisoner.

**The Discipline Imposed.** Because Sgt. Lynch had been working in the Task Force during the incidents underlying the Rodriguez IA investigation, Major Frank Griffin, the Commanding Officer of the Bureau of Investigations, was responsible for administering Sgt. Lynch's discipline. Defs.' 56(a)1 Statement ¶¶ 82-83. On or about April 30, 2002, Sgt. Lynch, accompanied by his union representative, met with Major Griffin, and he received a disciplinary transfer to Troop E and a oral counseling reduced to writing for his un-arrest of Mr. Rodriguez. Defs.' 56(a)1 Statement ¶ 86.[4]

However, by this time, Sgt. Lynch was no longer even working in the Task Force. In early 2001, after the Rodriguez complaint and another citizen complaint had been filed against him, Sgt. Lynch had voluntarily transferred off the Task Force to Troop E in Monteville, where he had worked in the early 1990s. Defs.' 56(a)1 Statement ¶ 4; Pl.'s 56(a)2 Statement ¶ 4.[5] Because Sgt. Lynch had already been working in Troop E for a year, the effect of the disciplinary transfer was trivial. Defs.' 56(a)1 Statement ¶ 4. Sgt. Lynch retained his rank of sergeant, his base pay, normal union steps in pay raises and obtained even more prestigious positions after the transfer.[6]

---

[4] Col. Barry decided what type of discipline should be imposed based on the recommendations of the LR Unit, and he conveyed his decision to Major Griffin for implementation. Defs.' 56(a)1 Statement ¶¶ 83-84.

[5] While paragraph 4 of Plaintiff's 56(a)(2) statement indicates that Sgt. Lynch was "pressured" to transfer, in his deposition Sgt. Lynch testified that he requested and obtained the transfer on his own after asking then-Col. Bardelli whether transferring was a good idea "for everyone's sake." *See* Lynch Dep., Ex. G [doc. #37] at 47-48.

[6] After he transferred to Troop E, Sgt. Lynch became a Community Policing supervisor. Defs.' 56(a)1 Statement ¶ 5.

Defs.' 56(a)1 Statement ¶ 89. In addition, Sgt. Lynch made more money in overtime after he left the Task Force than he did on the Task Force. Defs.' 56(a)1 Statement ¶ 91.

Nevertheless, less than 20 days after receiving notice of his discipline, Sgt. Lynch filed a grievance disputing the disciplinary transfer. Defs.' 56(a)1 Statement ¶ 94. On or about November 1, 2002, Sgt. Lynch settled his grievance by a Stipulated Agreement that changed the designation of his transfer from disciplinary to administrative. Defs.' 56(a)1 Statement ¶ 95. This lawsuit followed.

## II.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). The "District Court must resolve any factual issues of controversy in favor of the non-moving party," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990), mindful that its ultimate concern is to ascertain "whether there is a need for a trial –- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

At oral argument, counsel for Sgt. Lynch stated that his client's sole claim is a procedural due process claim that he was deprived of an alleged protected property interest in remaining on the Task Force without due process of law. Sgt. Lynch has, therefore, abandoned any other

claims of infringement of a liberty or property interest. The material facts regarding Sgt. Lynch's procedural due process claim are not in dispute and it is appropriate for disposition by summary judgment. For several reasons, Sgt. Lynch's procedural due process claim is deficient as a matter of law. Specifically: (i) Sgt. Lynch does not have protected property interest in his assignment to the Task Force; (ii) even if he did, he was not deprived of this interest; and (iii) in any event, Sgt. Lynch received all the process he was due.[7]

As a threshold matter, the Court does not believe that Sgt. Lynch has a protected property interest in remaining a member of the Task Force. "In order to succeed on a claim of deprivation of procedural due process, a plaintiff must establish that state action deprived him of a protected property or liberty interest." *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1060-61 (2d Cir. 1993) (internal citations omitted). The Supreme Court has held, that in order to "establish a property interest, a plaintiff must demonstrate more than an abstract need or desire for it, and more than a unilateral expectation; he must instead show that he had a legitimate claim of entitlement, arising from some independant basis in law." *Board of Regents v. Roth*, 408 U.S. 564, 576 (1971). For example, a public employee may have a property interest in continued employment if the employee is guaranteed continued employment absent "just cause" for discharge by an applicable collective bargaining agreement. *See Moffitt v. Town of Brookfield*,

---

[7] Sgt. Lynch does not appear to have a cognizable procedural due process claim against Assistant State's Attorney McNamara given that she was not responsible for providing notice or imposing discipline, and she did not influence the length of the investigation. Her only role in the investigation was as a witness. At best, Sgt. Lynch's allegation that Ms. McNamara lied during her interview may support a state law claim for defamation. However, as a witness, Ms. McNamara is entitled to absolute immunity from state law claims. *See generally Craig v. Stafford Construction*, 271 Conn. 78, 856 A.2d 372 (2004) (internal police department investigation is a quasi-judicial proceeding for purposes of absolute immunity).

950 F.2d 880, 885 (2d Cir. 1991).

As Defendants rightly argue, reassignments and transfers generally do not implicate a protected property interest for the purposes of due process, unless accompanied by a loss in pay. *See Huang v. Bd. of Governors,* 902 F.2d 1134, 1142 (4th Cir. 1990) (transfer or interdepartmental demotion, without loss of rank or pay, does not impinge upon a property interest); *Ramsey v. Bd. of Educ. Of Whitley County*, 844 F.2d 1286, 1274-75 (6th Cir. 1988) ("A particular job assignment is considered a noneconomic benefit [and]. . . is not protected by due process); *see also*, *Humberson v. U.S. Attorney's Office for Dist. of Columbia,* 236 F. Supp.2d 28, 32-34 (D.D.C. 2003) (collecting cases). Underlying these decisions is the desire of courts to avoid "convert[ing] any personnel decision made by a public employer into a constitutional case." *Humberson*, 236 F. Supp. 2d at 33.

Sgt. Lynch does not allege that he was paid less or demoted to a lower rank as a result of his transfer. *See generally* Pl.'s Opp. Brief. In fact, Sgt. Lynch's own admissions indicate that the transfer resulted in even more prestigious duties. *See* Pl.'s 52(a)2 Statement ¶ 89. The only negative outcome that Sgt. Lynch could point to was the potential loss in overtime opportunities, but in fact, he actually earned more overtime pay after his transfer out of the Task Force. *See* Pl.'s 52(a)2 Statement ¶ 91. On these facts, the Court finds that Sgt. Lynch's transfer is not a sufficient deprivation to trigger due process obligations. *See Barton v. City of Bristol*, 294 F. Supp. 2d 184, 197 (D. Conn. 2003) (citing *Caniello v. City of New York*, 2001 WL 11061, *1-*2) (S.D.N.Y. Jan. 4, 2001)) ("[T]he right to work overtime is not a constitutionally protected property interest. . . [and] courts have not found an unconstitutional deprivation of property. . . where an employee has retained his rank and base pay after an administrative action.").

Relying on cases involving union contracts requiring just cause for termination of employment, see for example, *Moffitt,* 950 F.2d at 885, Sgt. Lynch argues he has a constitutionally protected property interest in remaining on the Task Force because the police department's collective bargaining agreement requires that disciplinary transfers occur only for "just cause." Even where a public employee has a protected property interest under state law, "federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Ezekwo v. NYC Health & Hosps. Corp.*, 940 F.2d 775, 782 (2d Cir. 1991) (noting that "not every contractual benefit rises to the level of a constitutionally protected property interest") (citation and internal quotation marks omitted). However, this Court need not decide whether this provision of the union contract provides Sgt. Lynch with a constitutionally protected property interest.

For even assuming Sgt. Lynch has a constitutionally protected property interest in not receiving a disciplinary transfer out of the Task Force without just cause, Sgt. Lynch was not deprived of that alleged property interest. To begin with, Sgt. Lynch voluntarily left the Task Force and transferred to Troop E long before IA issued the disciplinary transfer. *See* Defs.' 56(a)1 Statement ¶ 4; Lynch Dep., Ex. G [doc. #37] at 47-48. Therefore, the causal relationship between Sgt. Lynch's transfer off of the Task Force and the discipline imposed by IA is tenuous at best. More importantly, it is undisputed that Sgt. Lynch successfully grieved the disciplinary action and obtained a settlement whereby his transfer was re-designated as "administrative." Defs.' 56(a)1 Statement ¶ 95. And it is also undisputed that under the union contract, Sgt. Lynch could be transferred at any time and without just cause for administrative reasons. *See* Ex. 2 [doc. # 38] at 26 (Only transfers "designated as disciplinary shall be subject to the 'just cause' standard.").

Therefore, Sgt. Lynch was not deprived of his claimed property interest in not being transferred out of the Task Force for disciplinary reasons. *See Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 213 (2d Cir. 2004) ("Courts have held that such post-deprivation procedures, providing a hearing to contest a challenged employment decision, are sufficient to satisfy due process."). *See also Hudson v. Palmer*, 468 U.S. 517, 539 (1984) (O'Connor, J., concurring) ("When adequate remedies are provided and followed, no uncompensated taking or deprivation of property with due process of law can result."); *Holland v. Rimmer*, 25 F.3d 1251, 1256-57 (4th Cir. 1994) (termination without notice did not deprive plaintiff of property interest, when termination was subsequently rescinded and plaintiff was awarded full back pay).

Finally, Sgt. Lynch asserts that he did not receive the process he was due in three respects: (i) he did not receive adequate notice of the charges against him; (ii) the investigation took too long; and (iii) the facts do not support the investigators' conclusions. The Court disagrees with each assertion.

First, Sgt. Lynch claims that he received inadequate "notice of the charges against him." *See Cleveland v. Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) (Due process requires that a "public employee is entitled to . . . notice of the charges against him."). However, he does not dispute that he was provided with a copy of Mr. Rodriguez's complaint within 24 hours after it was made. *See* Defs.' 56(a)1 Statement ¶ 50; Pl.'s 56(a)2 Statement ¶ 50. Instead, Sgt. Lynch claims Mr. Rodriguez's complaint provided inadequate notice because it did not specifically state that he was charged with violating the Release of Prisoners policy.

Even assuming for the moment that an experienced officer like Sgt. Lynch did not gain the relevant information from the citizen complaint and from his own knowledge of the events that

took place, it is undisputed that Sgt. Lynch received actual notice of the claimed violation on August 1, 2001 and February 13, 2002 when he was interviewed by department investigators and specifically asked about the un-arrest issue. *See* Ex. 15 [doc. #38] at 24-25; Ex. 21 [doc. #38] at 42. Sgt. Lynch had ample opportunity to explain his version of the events during his IA interviews as evidenced by his statements that he did not consider his release of Mr. Rodriguez to be an "unarrest." *See* Ex. 15 [doc. #38] at 24-25; Ex. 21 [doc. #38] at 42. In addition, Sgt. Lynch has failed to identify any other facts he would have brought to the attention of the IA Unit had he been told earlier that he was being investigated him for allegedly violating the Release of Prisoners policy. Finally, before any discipline was imposed, Sgt. Lynch was given a copy of the IA Unit investigation report, which specified the claimed violations. Therefore the Court is satisfied that Sgt. Lynch received adequate notice and an opportunity to be heard that conformed with due process requirements. *See Loudermill*, 470 U.S. at 543 n.8.

     Next, Sgt. Lynch challenges the duration of the investigation, citing his right to be heard "at a meaningful time" under *Amstrong v. Manzo*, 380 U.S. 545, 552 (1965). However, *Armstrong* dealt with the delay between a deprivation of rights and a post-deprivation hearing. By contrast, in this case, Sgt. Lynch is complaining that the Defendants took too long *before* deciding to impose any discipline. The Court is not aware of any case imposing a constitutional time limit on a decision to impose discipline in the first place. The approximately one-year period of time that it took to investigate the charges against Sgt. Lynch was not inappropriate in the circumstances of this case. In this Court's view, it is in the employee's best interest for employers to take their time – to thoroughly investigate the facts and circumstances and to pass any recommended decision up through several administrative layers – *before* depriving an individual

of what Sgt. Lynch claims is a valuable property right. *See Hudson v. City of Chicago*, 375 F.3d 554, 562 (7th Cir. 2004) ("[A] short delay actually benefits the employee by allowing state officials to obtain more accurate information."). While Sgt. Lynch apparently would prefer state actors like Defendants to rush to judgment on such important matters, there is nothing in the Due Process Clause that imposes such a *pre*-deprivation time limit.

Third and finally, Sgt. Lynch claims that the facts do not support the finding that he violated the "unarrest" policy. As he puts it in his brief, he deserves a "decision that was actually justified by the facts." Pl's Opp. Brief. [doc. # 43] at 12. As is apparent, Sgt. Lynch's complaint in this regard is not based upon a lack of procedure, but rather reflects a substantive disagreement with the results of the IA investigation. Such a substantive disagreement, however, is not a claim of a violation of procedural due process, the only claim that Sgt. Lynch is pursuing. *See Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000) ("[T]hough plaintiff . . . asserts that he was [denied both substantive and procedural due process]. . . his complaint is with the substantive result – the ultimate decision to expel him. His argument is thus one of substantive due process.").[8]

As a matter of procedure, it is clear to the Court that Sgt. Lynch received all the process he was due. Sgt. Lynch was given notice of the charges against him, both written and oral. He had ample opportunity to respond to the charges during the pre-deprivation IA investigation. And, if

---

[8] Even if this Court were to consider this claim under the rubric of substantive due process, it is not enough that IA may have reached an incorrect decision, as Sgt. Lynch alleges. A substantive due process "claim is not established simply by proving that [one] did not obtain what [he] is entitled to under state law. For state action to be taken in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels 'arbitrary' and 'outrageous.' " *Natale v. Town of Ridgefield* 170 F.3d 258, 262 (2d Cir. 1999). There is nothing arbitrary or outrageous about the IA Unit's decision in this case.

there were errors in the decision, he had the opportunity to challenge the decision in post-deprivation proceedings. Indeed, that is just what Sgt. Lynch did, but instead of obtaining a decision in his grievance challenge, he chose to settle it.

Accordingly and on the basis of the undisputed facts, the Court concludes that Sgt. Lynch's procedural due process claim is without merit.

### III.

For the foregoing reasons, Defendants' Motion for Summary Judgment [**doc. #34**] is GRANTED and judgment should enter in favor of Defendants on all claims.  **The Clerk is directed to close this file.**

IT IS SO ORDERED.

/s/      Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: October 13, 2004.